**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Howard I. Cooper, | ) | Case No. 23 B 16573 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Lawrence Cooper, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 24 A 00256 |
| | ) | |
| v. | ) | |
| | ) | Hon. Michael B. Slade |
| Howard Cooper, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION DENYING MOTION TO DISMISS**

This Adversary Proceeding is the latest chapter in a longstanding dispute between father-and-son dentists Lawrence Cooper ("Larry") and Howard Cooper ("Howard"). Their dispute first ripened into litigation in 2019, when Larry filed suit against Howard, alleging breach of contract, fraud, breach of the implied covenant of good faith, and unjust enrichment. The results of Larry's suit were a mixed bag: Larry won his breach of contract claim summarily, but his request for summary judgment on his remaining claims was denied. *See Cooper v. Cooper*, 657 F. Supp. 3d 1025, 1034 (N.D. Ill. 2023). Larry ultimately dismissed the remaining claims voluntarily and with prejudice. *See Cooper v. Cooper*, No. 19-cv-6855, Dkt. No. 94 (granting judgment for Larry in the amount of $1,204,357.09, plus interest, the "Judgment").[1]

---

[1] The District Court's summary judgment opinion and the Judgment were attached to the Adversary Complaint, *see* Compl. Exs. 1 and 4, and thus are part of the Adversary Complaint for all purposes, including this Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 10(c); Fed. R. Bankr. P. 7010; *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

1

With his appeal from the Judgment pending, Howard filed for relief under chapter 7 of the bankruptcy code on December 11, 2023. Larry then initiated this Adversary Proceeding, asking that Howard be denied a discharge and that the Judgment debt be declared non-dischargeable. Larry's Adversary Complaint (Dkt. No. 1) is 28 pages and 243 paragraphs long, containing seven separate (though, frankly, repetitive) counts:

- Count I: Objection to Discharge pursuant to 11 U.S.C. § 727(a)(2) for alleged concealment of property of the debtor within a year of the Petition Date (Compl. ¶¶ 83-90);

- Count II: Objection to Discharge pursuant to 11 U.S.C. § 727(a)(3) for alleged concealment or destruction of documents related to Howard's financial condition (Compl. ¶¶ 91-93);

- Count III: Objection to Discharge pursuant to 11 U.S.C. § 727(a)(4) for alleged false statements under oath in connection with the filing of Howard's schedules, statements, and other bankruptcy forms, and his testimony at the section 341 meeting of creditors (Compl. ¶¶ 94-99);

- Count IV: Objection to Discharge pursuant to 11 U.S.C. § 727(a)(5) due to Howard's alleged failure to satisfactorily explain his inability to meet his liabilities despite allegedly receiving millions of dollars in funds that would be sufficient to meet his liabilities (Compl. ¶¶ 100-103);

- Count V: Exception to Discharge pursuant to 11 U.S.C. § 523(a)(2)(A) due to Howard consummating a transaction to obtain Larry's dental practice prepetition, certain terms of which Howard allegedly never intended to honor (Compl. ¶¶ 104-136);

- Count VI: Exception to Discharge pursuant to 11 U.S.C § 523(a)(4) (Embezzlement) due to the same allegations, namely, that Howard "wrongfully took" Larry's portion of the sale proceeds from a subsequent transaction about which Larry complains (Compl. ¶¶ 137-165);

- Count VII: Exception to Discharge pursuant to 11 U.S.C. § 523(a)(6) because of alleged willful and malicious injury inflicted on Larry by Howard's conduct (Compl. ¶¶ 166-195); and

- Count VIII: Exception to Discharge pursuant to 11 U.S.C. § 523(a)(4) (Fraud in a Fiduciary Capacity) (Compl. ¶¶ 196-243), asking that discharge be denied because Howard's alleged fraud was purportedly committed while "Howard was acting as a fiduciary of Larry" (Compl. ¶¶ 224, 239).

2

Ultimately, Larry seeks a simple result: that the Judgment is not discharged in this chapter 7 case.

Howard filed a Motion to Dismiss on October 30, 2024, prior to my appointment to the bench. *See* Dkt. No. 15. The Motion is now fully briefed. In it, Howard asks me to dismiss the Adversary Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), applicable here via Federal Rule of Bankruptcy Procedure 7012(b). Howard's Motion makes two arguments: (1) that Counts I-IV contain insufficient detail to state claims (Dkt. No. 15, Mot. to Dismiss at 5-9); and (2) that Counts V-VII are barred by claim preclusion (a/k/a *res judicata*) (*id.* at 9-11).

For the reasons that follow, I disagree with Howard on both fronts.

Procedurally, at this stage of the case, federal courts generally require only notice pleading, meaning that a claim as pled must only be plausible, raising a plaintiff's right to relief above a "speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007), and contain "enough details about the subject-matter of a case to present a story that holds together." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Catinella v. Cnty. of Cook*, 881 F.3d 514, 516 (7th Cir. 2018)). But that's all. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). I can dismiss plaintiff's claims "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). To survive Rules 12 (and 7012), "[i]t is enough to plead a plausible claim, after which 'a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint."'" *Thomas v. JBS Green Bay, Inc.,* 120 F.4th 1335, 1337 (7th Cir. 2024) (quoting *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017)).

A "full description of the facts that will prove the plaintiff's claim comes later, at the summary judgment stage or in the pretrial order." *Id.*

For claims that sound in fraud, of course, a plaintiff's burden is more substantial. "Fed. R. Civ. P. 9 applies in an adversary proceeding," Fed. R. Bankr. P. 7009, and Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To comply with the obligation to describe "with particularity" the "circumstances" alleged to constitute fraud or mistake, the classic formulation in the Seventh Circuit is that a plaintiff must state the "who, what, when, where, and how" of the alleged fraud, a/k/a "the first paragraph of any newspaper story." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).

Substantively, the gist of the Adversary Complaint is a request that I deem the Judgment non-dischargeable and otherwise deny Howard a discharge. "The primary benefit of filing for bankruptcy under Chapter 7 is that the financial discharge gives the debtor a 'fresh start.'" *Stamat v. Neary,* 635 F.3d 974, 978 (7th Cir. 2011). But "[t]he successful functioning of the Bankruptcy Code hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Ross v. RJM Acquisitions Funding LLC,* 480 F.3d 493, 498 (7th Cir. 2007) (quoting *In re Mascolo,* 505 F.2d 274, 278 (1st Cir. 1974)). Thus, in chapter 7 cases, Congress crafted grounds for denying a debtor's discharge in Section 727 of the Bankruptcy Code. *See* 11 U.S.C. § 727; *In re Kempff,* 847 F.3d 444, 447 (7th Cir. 2017). Congress also identified categories of debt that are excepted from the discharge. *See* 11 U.S.C. § 523; *Kuboda Tractor Corp. v. Strack (In re Strack),* 524 F.3d 493, 497 (4th Cir. 2008).

Applied here, for Counts I-IV, Howard will ultimately be denied a discharge if Larry proves by a preponderance of the evidence that Howard concealed property of the estate from

4

creditors in the year prior to filing, failed to keep adequate records (or concealed or destroyed them), knowingly gave a false oath or account in connection with the bankruptcy case, or inexplicably depleted his assets. 11 U.S.C. §§ 727(a)(1), (3), (4)(A), and (5); *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966-67 (7th Cir. 1999). For Counts V-VII, I look to Section 523 of the Bankruptcy Code, which provides that a discharge "does not discharge an individual debtor from any debt—(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition," 11 U.S.C. § 523(a)(2)(A), "for fraud or defalcation while acting in a fiduciary capacity [or] embezzlement," *id*. § 523(a)(4), or "for willful or malicious injury by the debtor to another entity or to the property of another entity," *id*. § 523(a)(6).

Howard's requests that I dismiss Counts I-IV are easiest to address. While it is unclear whether any (let alone all) of these claims will ultimately prevail, as pled Counts I-IV clearly satisfy the pleading burdens relevant here:

- For Count I, Larry contends that Howard concealed property within one year of the Petition Date. Among other things, the Adversary Complaint alleges that within that time frame, Howard "request[ed] his employer to issue paper checks or electronic checks which were diverted to the Debtor's spouse [sic] bank account." (Compl. ¶ 85) He did this, allegedly, "with the sole intent of avoiding, hindering, delaying and defrauding Larry." (*Id.* ¶ 86; *see also id.* ¶¶ 70 ("The Debtor requested paper checks and later the electronic transmission of payroll checks solely in order to prevent Larry (a creditor) from obtaining those funds."), 77-78 (Howard did not list these funds on his schedules or bankruptcy filings and

5

his "sole goal is to keep the secreted and concealed funds hidden and unknown to this Court, Larry, the United States Trustee and others")  At least some of the allegedly withheld property is identified in the Adversary Complaint (*i.e.*, Howard's salary), *compare In re Kontrick,* 295 F.3d 724, 736-37 (7th Cir. 2002) (affirming finding of Section 727(a)(2)(A) violation and non-dischargeability where a debtor deposited his paycheck in another bank account during the year prior to bankruptcy), *aff'd sub nom Kontrick v. Ryan*, 540 U.S. 443 (2004), and Rule 9(b) expressly permits intent to be "alleged generally."  Fed. R. Civ. P. 9(b). While actual proof and more detail will surely follow (and would need to follow for Larry to prevail), these allegations state a plausible claim that discharge should be denied pursuant to 11 U.S.C. § 727(a)(1).

- For Count II, Larry contends that Howard withheld or destroyed evidence germane to this chapter 7 case.  By statute, Howard will not receive a discharge if he has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which [his] financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."  11 U.S.C. § 727(a)(3).  This provision "requires as a precondition to discharge that debtors produce records which provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present."  *In re Juzwiak,* 89 F.3d 424, 427 (7th Cir. 1996) (internal quotations omitted).  I do not know at this point what information Howard has provided to

the chapter 7 trustee, the United States Trustee, or creditors, but that doesn't matter.  While the pleading here is perhaps the thinnest of all Counts in the Adversary Complaint, Larry does allege specifically that Howard testified under oath that he somehow "has no records of the disposition" of nearly $4.5 million received in the six years prior to the petition date (*see* Compl. ¶¶ 65, 75), []which Larry characterizes as "the secreted and concealed funds." (Compl. ¶¶ 76, 77, 93)  As I am required to do, I am giving Larry "the benefit of imagination" and making rational hypotheses about the information that should exist but does not, "consistent with the complaint[,]" understanding that, as noted above, a "full description of the facts that will prove the plaintiff's claim comes later." *Thomas*, 120 F.4th at 1337.  Given these rules, Count II is sufficient, for now.

- For Count III, Larry identifies specific documents that Howard filed in this chapter 7 case under penalty of perjury that he contends "were materially false" because they failed to "fully and accurately disclose his assets." (Compl. ¶¶ 50, 96).  Larry further contends that Howard "falsely testified under oath" regarding the $4.5 million of alleged receipts at the Section 341 meeting of creditors and did so "knowingly." (*Id.* ¶ 97).  Ultimately, to prevail on Count III, Larry will need to prove that Howard "made a material false statement under oath" at a time that Howard "knew the statement was false" and did so "with fraudulent intent." *In re Chlad*, 922 F.3d 856, 861 (7th Cir. 2019).  The statement(s) at issue must also be material and must impede creditor efforts to discover Howard's true financial condition. *E.g., In re Kitson*, 341 Fed. Appx. 234, 237-38 (7th Cir. 2009).  Again, at this point in the case I have no idea whether or not Larry's factual allegations

are accurate.  But I must assume them to be true for purposes of this motion and they state a plausible claim, which requires me to deny the motion to dismiss.

- For Count IV, Larry contends that at the Section 341 meeting of creditors, Howard "was not able explain [sic] . . . the loss of assets or deficiency of assets to meet Howard's liabilities."  (Compl. ¶ 103)  Earlier in the Adversary Complaint, Larry identified nearly $4.5 million that Howard allegedly received or earned in the six years prior to the petition date (Compl. ¶¶ 58-76), described the transaction that led to the parties' lengthy legal battle in District Court, in which Howard received $2.4 million for the sale of the dental practice (Compl. ¶¶ 36-37), described the schedules and statements filed by Howard in this chapter 7 case claiming very little in assets (Compl. ¶¶ 54-55), and cited Howard's filed tax returns.  When viewed together (again, taking the Complaint allegations as true), things do indeed look fishy.  Given those allegations, it hard to understand where the $2.4 million from the 2019 transaction went, and even harder to understand what Howard did with the nearly $4.5 million allegedly received in ordinary income between 2018 and 2023 (Compl. ¶¶ 58-65).  Paragraphs 57-76 of the Adversary Complaint describe a series of payments received by Howard which, according to the Adversary Complaint, appear to be missing—or alternatively that, according to the Adversary Complaint, Howard has not been able to explain what happened to them.  Again, at this point in the case, I have no idea whether the allegations in the Adversary Complaint are true, but "Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage,

8

loss, or disappearance of assets." *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 886 (7th Cir. 1983). Among other things, Howard must establish "all specific uses of the proceeds" from transactions outside the "ordinary course of business" like the sale of his dental practice. *See Stamat*, 635 F.3d at 981. It is plausible, based on the allegations in the Adversary Complaint, that Howard has failed to describe where the money he made in the transaction and since went, and plausible that his alleged failure to articulate the funds' disposition in this chapter 7 case was intentional and nefarious. Again, Howard's intent may be pled generally, *see* Fed. R. Civ. P. 9(b), and at this point in the case, an alleged malicious intent can be inferred from numerous Adversary Complaint allegations, *see* Compl. ¶¶ 54-82, 87-88, 96-99, 102-103. To be clear, I am not making *any* findings of ill intent, but the Adversary Complaint allegations are sufficient to state a claim and proceed with the case.

Howard's argument to dismiss the causes of action related to the underlying transaction causing strife between Larry and Howard (Counts V-VI) is a legal one. Indeed, there is no secret what Larry is contending in those claims: that because of what Howard allegedly did to Larry, the Judgment debt should be excepted from the chapter 7 discharge. According to the Adversary Complaint, in 2011, Larry sold Howard his dental practice for $180,000 on the condition that if Howard re-sold it prior to 2024, Howard would give Larry half of the net sales price. (Compl. ¶¶ 2, 24-28, 106) Howard allegedly accepted the deal, but never intended to honor it, instead simultaneously forming a corporation to hold the assets of the dental practice and assigning the assets he had just acquired to that corporation because he believed selling *it* would permit him to circumvent the deal Howard and Larry had just cut. (Compl. ¶¶ 3-6, 39-44, 108-09) Howard

9

then sold the practice to a third party in 2019 for $2.4 million, without telling Larry about the deal, and refused to remit to Larry his share. (Compl. ¶¶ 7-9, 30-38, 110-113, 119)

Applying those allegations to the concept of dischargeability, in Count V, Larry contends that the "debt owed by Howard to Larry as a result of Howard's fraud and false representations and false pretenses"—half of the sale proceeds from the 2019 sale—"should be excepted from discharge pursuant to 11 USC 523(a)(2)(A)." (Compl. ¶ 136) In Count VI, Larry repackages the same allegations as "embezzlement," calling Howard's refusal to pay half of the sale proceeds to Larry a "conversion of Larry's portion of the sale" (Compl. ¶ 152) and claiming that the debt created by this failure "as a result of Howard's embezzlement should be excepted from discharge pursuant to 11 USC 523(a)(4)." (Compl. ¶ 165) In Count VII, Larry repackages the same factual allegations yet again, arguing that that Howard's agreement to the deal in 2011, without an intention to honor it, and his subsequent "conversion of Larry's portion of the sale" price (Compl. ¶ 181) was "intentional, willful, wanton, and performed with reckless disregard for the effect such actions would have upon the parties involved" (Compl. ¶ 192), which he contends is a "willful and malicious" act excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). (Compl. ¶ 195) And in Count VIII, Larry repackages the same allegations one final time, arguing that the same result should befall Howard because, when he signed the agreement with Larry without an intention to honor such agreement, Larry was acting in a fiduciary capacity as a family member in whom Howard placed trust and confidence. (Compl. ¶¶ 223-25, 239)

Howard's only argument for dismissal of Counts V-VIII in the Motion (Dkt No. 15) is premised on the claim that the underlying facts of the dispute between Howard and Larry were litigated to some degree in the District Court before Judge Bucklo. The lynchpin of Howard's argument is that when pleading the District Court action, Larry included a fraud claim (among

10

others) along with his breach of contract claim against Howard.  In her summary judgment decision, while granting summary judgment for Larry on his contract theory, Judge Bucklo denied summary judgment on Larry's fraud claim, finding that "Howard has put forth evidence to at least create a triable issue." *Cooper*, 657 F. Supp. 3d at 1033.  No judicial findings were made suggesting there wasn't fraud, and indeed Larry was entitled to try his fraud claim to a jury in an effort to obtain further relief even after already winning his contract claim and a judgment exceeding $1 million plus interest.  But because the fraud theory could get him little further relief in District Court over and above what he had already won (other than potentially punitive damages), and in an effort to expedite judgment and collection, Larry filed a motion for "entry of final judgment on count two . . . and voluntarily dismissal of counts one, three, and four."  *See Cooper v. Cooper*, 19-cv-6855, Dkt. No. 92, at 1.  Thus, when Judge Bucklo entered the Judgment, she dismissed Larry's fraud claim, and his other non-contract claims, "with prejudice."  *Id.*, Dkt. No. 94, ¶ 3.

Howard's argument is that because Larry pled fraud in his District Court suit, chose not to pursue that claim further given his success on his contract claim, and voluntarily dismissed the claim with prejudice, Larry is now barred by principles of claim preclusion (a/k/a *res judicata*) from arguing that the Judgment, which is based on the same facts, is non-dischargeable on grounds of fraud, embezzlement, or because it (allegedly) caused willful and wanton injury.

*Res judicata* is an affirmative defense, Fed. R. Civ. P. 8(c)(1), ordinarily resolved after the pleading stage, *see Sapp v. Foxx*, 106 F.4th 660, 664 (7th Cir. 2024).  Where the availability of the defense is apparent from the complaint itself, however, the court can resolve the defense as part of a dismissal motion.  *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020).  That is the case here, particularly given that Larry attached the Summary Judgment opinion and Judgment that

11

Howard contends to have preclusive effect as exhibits to the Adversary Complaint.  I disagree with Howard's *res judiciata* argument on the merits for several reasons.

*First*, Howard's argument is inconsistent with the logic and result of the Supreme Court's decision in *Brown v. Felsen*, 442 U.S. 127 (1979).  Felsen, later a debtor, owned a car dealership specializing in high-end vehicles (Lotus, Ferrari, and the like) and had convinced Brown to guarantee his dealership's bank debt.  Prepetition, the lender had sued both Felsen and Brown, and Brown had filed a cross-claim against Felsen, arguing fraudulent inducement into the guarantee.  That case was settled by a stipulation (again, prepetition) and, when Felsen later filed for bankruptcy, Brown argued that he was ineligible for discharge because of the fraud that had allegedly induced him to guarantee Felsen's debt.

The bankruptcy court in *Felsen*, believing itself bound by prior precedent (there in the Tenth Circuit), applied principles of *res judicata* to reject Brown's non-dischargeability complaint, finding that "because neither the judgment nor the record showed that [Brown's] allegation of misrepresentation was the basis for the judgment on the cross-claim against [Felsen], the liability had not been shown to be within" the provisions of the Bankruptcy Act calling for non-dischargeability due to fraud and thus "granted summary judgment for [Felsen] and held that the debt was dischargeable." *Brown*, 442 U.S. at 130.  But the Supreme Court disagreed.  The Court's holding and reasoning renders (in my view) principles of *res judicata* inapplicable to most non-dischargeability proceedings and certainly to these.[2]

---

[2]   Howard relies on *LB Steel, LLC v. Walsh Constr. Co. (In re LB Steel, LLC)*, 572 B.R. 690 (Bankr. N.D. Ill. 2017), but that case does not help him.  *LB Steel* concerned a determination of whether certain funds belonged to the bankruptcy estate, *id.* at 701-08; it had nothing to do with dischargeability and thus *Felsen* did not apply. Moreover, in *LB Steel*, my colleague Judge Baer found that *res judicata* did *not* bar a Debtor's adversary proceeding because the statutory scheme provided in the Bankruptcy Code expressly contemplated that the Bankruptcy Court would consider avoidance claims related to potential property of the estate despite claims that ownership of the relevant funds had been decided in prior litigation. *See id.* at 706-07.  Thus, while *LB Steel* is not on point here, the gist of the result reached there is consistent with the Supreme Court's dictates in *Felsen* (which are right on point for dischargeability cases like this one).

12

The *Felsen* Court's logic sounds in principles of judicial economy.  In *Felsen*, as here, issues of dischargeability (or lack thereof) were not present and could not have been present during the prior proceeding; the debtor's bankruptcy was "still hypothetical" and the parties had "little incentive to litigate" such issues even if doing so was possible at the time.  *Id.* at 135.  "The rule proposed by [Felsen] would force an otherwise unwilling party to try [dischargeability] questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future."  *Id.*  Equally (if not more) important, whether or not a particular debt is dischargeable is a question that only can arise in a bankruptcy case, and such questions have been entrusted by Congress to the core jurisdiction of the bankruptcy courts.  *See* 28 U.S.C. § 1334(b); 28 U.S.C. § 157(b)(2)(I); *800 S. Wells Com. LLC v. Gouletas (In re Gouletas)*, 590 B.R. 494, 498 (Bankr. N.D. Ill. 2018) ("As a proceeding to determine the dischargeability of a debt is a matter arising under the Bankruptcy Code and a proceeding to deny debtor's discharge may only arise in a case under the Bankruptcy Code, the Adversary Case is a core proceeding…").  Suggesting that a creditor was required to litigate prepetition all questions that answer future dischargeability questions "would undercut Congress' intention to commit [dischargeability] issues to the jurisdiction of the bankruptcy court."  *Felsen*, 442 U.S. at 135.

The Supreme Court held in *Felsen,* following the reasoning I just described, that while Felsen was "certainly entitled to claim that *res judicata* would bar further pursuit" of additional, "extraordinary remedies" for state-law violations given what had occurred during the prepetition litigation, "their hypothetical desirability provides no basis for preventing [Brown] from recovering on the debt, the remedy he elected from the beginning."  *Id.* at 137-38.  So too here. In the context of non-dischargeability litigation, "[r]efusing to apply *res judicata* here w[ill] permit the bankruptcy court to make an accurate determination whether respondent in fact

13

committed the deceit, fraud, and malicious conversion which petitioner alleges," the "type of question Congress intended that the bankruptcy court would resolve," and I can "weigh all the evidence" while also "tak[ing] into account whether or not [Larry's] failure to press these allegations at an earlier time betrays a weakness in his case on the merits." *Id.* at 138.[3]

*Second*, applying principles of *res judicata* to bar Larry from presenting the facts of his case to prove non-dischargeability would ultimately harm the principles of finality and judicial economy that the doctrine of *res judicata* is supposed to promote. Recall that, after he won his contract case in the District Court on summary judgment, Larry could have pressed his fraud case to trial (as all Judge Bucklo found on those claims were that Howard's defenses to Larry's fraud claim were sufficiently factually plausible to preclude summary judgment). But Larry made the responsible and eminently practical decision to voluntarily dismiss those claims so that Judge Bucklo could enter a final judgment on his contract claims and he could begin collection proceedings. Howard's argument now—that Larry's reasoned decision precludes him as a matter of law from presenting these facts as grounds for non-dischargeability—is a classic "gotcha" argument, the epitome of a legal technicality. And if he's right, every litigant facing a financially troubled defendant will have no choice but to press fraud claims to the limit in prepetition litigation—regardless of the practical realities of doing so—or be at risk of having only a pyrrhic

---

[3]   Subsequent cases confirm that *Felsen* requires me to reject Howard's dismissal arguments here. *See, e.g., Meyer v. Rigdon*, 36 F.3d 1375, 1378 n.1 (7th Cir. 1994) ("The Supreme Court has held that *res judicata* does not apply in bankruptcy discharge exception proceedings. *Brown v. Felsen*, 442 U.S. 127 [] (1979)."); *Levinson v. United States*, 969 F.2d 260, 263 (7th Cir. 1992) (rejecting argument that failure to assert and win fraud claim in a tax dispute precluded later argument that the debtor could not discharge that debt) (by seeking a declaration of non-dischargeability, the government "is simply responding to Levinson's bankruptcy petition and attempting to prevent a legitimate debt from being discharged. The *Brown* court refused to apply *res judicata* on nearly identical facts, and we follow suit."); *Custer v. Yao (In re Yao)*, Adv. Pro. No. 23 A 361, 2024 WL 3517391, at *5 (Bankr. N.D. Ill. July 23, 2024) ("Courts are generally in agreement that *res judicata*, also known as claim preclusion, does not prevent a state court plaintiff from litigating the question of dischargeability in bankruptcy court."); *Boscarino v. Borsellino (In re Borsellino)*, 619 B.R. 910, 919 (Bankr. N.D. Ill. 2020) (same); *Crowe v. Moran (In re Moran)*, 413 B.R. 168, 177-80 (Bankr. D. Del. 2009) (discussing and applying *Felsen* in detail).

victory on his or her other claims when the debt on such claims is discharged in bankruptcy. That result would make no logical sense, which is precisely why the Seventh Circuit rejected the application of *res judicata* when applying *Felsen* to similar facts.  *See Levinson,* 969 F.2d at 263 ("*Res judicata* ought not be applied so as to inhibit such compromises. We would not want the government, or any creditor, to feel compelled to bring every conceivable charge against a debtor lest that debtor should declare bankruptcy and use the creditor's spirit of compromise as a bar to its right to defend its award.").

Accordingly, while other preclusion doctrines may assist one or both parties later in this litigation,[4] *res judicata* does not bar any of the causes of action asserted by Larry as a matter of law.

I will issue a separate order denying Howard's motion to dismiss.  Howard's answer must be filed on or before February 4, 2025.  The parties are directed to meet and confer about a pre-trial and trial schedule ahead of the next status hearing in this Adversary Proceeding on February 5, 2025, at which time I intend to enter a scheduling order.

Signed:  January 21, 2025          By:  _____

MICHAEL B. SLADE
UNITED STATES BANKRUPTCY JUDGE

---

[4] In his reply brief, along with a slew of other new arguments, Howard for the first time argues that one or more of Larry's claims is barred by *res judicata*'s cousin, *collateral estoppel* (a/k/a issue preclusion).  *See* Dkt. No. 27, Howard's Reply Brief at 7.  While issue preclusion would not have changed the results of this particular Rule 12(b)(6) motion, it may assist one or both parties later in this litigation and may require me to deem particular issues previously litigated to have been resolved on the merits by that prior litigation.  But Howard never mentioned *collateral estoppel* once in his Motion.  *See* Dkt. No. 15, Mot. to Dismiss.  Nor did he challenge the plausibility of Counts V-VIII of the Adversary Complaint in the Motion; he first added those arguments the end of his reply brief.  *See* Reply at 7-11.  I will not address those arguments at this time because it is "well settled that issues raised for the first time in a reply brief are deemed waived."  *Nelson v. La Crosse Cnty. Dist. Atty.*, 301 F.3d 820, 836 (7th Cir. 2002); *see also In re Whitlock-Young*, 571 B.R. 795, 810 (Bankr. N.D. Ill. 2017) ("Without prior leave of court, movants may not raise new issues in reply briefs.")  In any event, each of those arguments is far more appropriate for later in the litigation than now.

15